UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case Number \_\_\_1:19-cv-25037_____

**KARRIE SCHAUBROECK,**

    **Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION,**

    **Defendant.**
_____/

## COMPLAINT & JURY DEMAND

**I.   Preliminary Statement**

    1.   The Plaintiff, Karrie Schaubroeck, sues Defendant, Federal Express Corporation, for sex discrimination and retaliation in violation of Title VII and the Florida Civil Rights Act.

    2.   Defendant is a Delaware corporation with a principal place of business in Tennessee.

1

3. Defendant conducts business in Miami, Florida, among other cities, states and countries. Defendant maintains its Florida registered agent office in Plantation, Florida.

4. The Honorable Court has original jurisdiction over the Title VII claims for sex discrimination and retaliation; the Honorable Court has supplemental jurisdiction over the FCRA claims for sex discrimination and retaliation.

5. Venue is appropriate in the Southern District of Florida as Plaintiff worked for Defendant in Florida, and Defendant maintains its registered agent in the District.

6. Defendant employs in excess of 1000 employees.

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission within 300 days of suffering an adverse employment action.

8. The EEOC issued a right to sue letter to Plaintiff.

9. This Complaint is being filed within 90 days of the right to sue letter.

## II.     Factual Background

10.     In November 2003, Plaintiff was hired by Defendant at the Rochester (ROC) station in Rochester, New York for the position Handler.

11.     In January 2004, Plaintiff advanced into a courier position, still at the ROC station.

12.     In June 2010, Plaintiff was encouraged by both managers and the Sr Manager to take classes for management.

13.     In February 2011, Plaintiff advanced into a management at the ROC station, this was a AAA station. Plaintiff managed 24 direct reports.

14.     In April 2015, Plaintiff interviewed and received a position as a manager at the Boston (BVY) station in Boston Massachusetts, this is also a AAA station. However, this station handled almost triple the inbound volume. Plaintiff managed 22/23 direct reports.

15. In 2016 and 2017, Plaintiff interviewed for several positions in Florida and was passed up, for those management positions, men were hired for these positions.

16. In January 2018, Plaintiff interviewed and received a position as a manager under Gerald Bilbrey at the Lakeland (LALA) station in Lakeland FL. There was a shuffling of Sr managers, Gerald Bilbrey was moved and Hugo Perez took over Lakeland in June 2018. Lakeland is rated as an A station, Plaintiff managed 19 direct reports.

17. Late in the month of July 2018, Plaintiff was verbally threatened by an employee, a CSA named Dreena Burnham. Plaintiff brought this to her Sr Manager's attention through email as well as the HR representative Lourdes Apiriacio. It was not taken seriously. Plaintiff gave names of people that she believed heard what was said. Dianna Harhai, Taylor Bryant, Carol Ervolina. All should have been asked for statements, Plaintiff does not know if they did or did not give statements as Plaintiff was not involved in Hugo's "investigation." Plaintiff was told roughly 2 weeks after sending the

email that he (Hugo) did not find any workplace violence. Plaintiff was never interviewed by Lourdes or Security.

18. After that Plaintiff was targeted systematically by several individual employees.

19. In June 2018, a courier (Erika Yochem) could not find her manager Mark Morgan, as he left most days before 11 AM, so she came to Plaintiff. Yochem stated someone took her cell phone and dumped it in the garbage. Yochem went on to say that she found her cell phone; however, Yochem would not state where, what day or time she located the phone. Plaintiff sent an email to John Gorman (Security) and he stated since Plaintiff did not know when it was taken, where it was found and what day and time it was found he could not really do an investigation. Plaintiff thanked him for his time and relayed this onto Yochem. At that time, Yochem was or she stated she was ok with what she was told.

20. Roughly in September or October 2018, a courier (Delores Powell) called HR because Plaintiff had her meet another courier on

5

the road. Powell was not happy and stated she did not meet her (Jenny) and if Plaintiff made her the HR would receive a phone call. Plaintiff told her if need be call HR after the deliveries were complete. Plaintiff was later sent an email stating Plaintiff should have done an investigation. Plaintiff asked Lourdes on what, nothing was told to Powell; only one that Powell did not meet Jenny. Plaintiff also stated there was nothing on file for any workplace violence claim and if there was an incident the incident she was referring to was before Plaintiff arrived at the LALA station. Plaintiff went on to state if there was any investigation should not her manager Mark Morgan have already conducted the investigation when it supposedly happened in 2017. Plaintiff was not answered. This is the second time Plaintiff was neither supported nor shown any support in front of the employees, because Plaintiff was a female in a leadership position.

21. Throughout the year Plaintiff was "asked" (basically told) to come in and cover the AM manager Mark Morgan so Jim did not have to cover the AM sort alone.  Whenever Plaintiff needed to go to

the doctors or had an appointment neither one of them were "asked" to cover Plaintiff nor made to do so. Plaintiff was treated worse than a similarly situated employee in LALA; the only difference between us was our gender. Defendant treated women worse than men, at least that was the way under the direction of Hugo.

22. For example, Plaintiff had a meeting in November 2018, Plaintiff sent out 3 messages over a 3-day period to the couriers. One of my couriers did not show to the meeting. Hugo confronted the courier and she stated it was not written on the schedule. Hugo then came to Plaintiff and stated Plaintiff must update the schedule for the meeting; however, neither Mark nor Jim are made to update the schedule for meetings neither have Plaintiff ever seen them do so. This is another example of how Hugo treats women differently than men.

23. In December 2018, Plaintiff was told she had to work both the AM and PM shift during the PEAK time roughly the last 2 weeks of December; however, neither Jim Carabba nor Mark Morgan were

told they had to stay and work the PM shift with me. This is another example of how women are treated worse at FedEX under the direction of Hugo.

24. During this PEAK time, Plaintiff came in and helped with either sorting documents or off loading the packages. Plaintiff also relieved couriers to use the restroom or get caught up with their pull (sort the packages into the correct trucks). On one of the days Plaintiff was accused of taking or knowing who took a radio. This radio belonged to Erika Yochem. Yochem proceeded to interrupt Plaintiff's conversation with Dianna Harhai and Mark Morgan, not once but 3 times, then go off screaming down the hallway. Mark did nothing. Finally, by the third interruption Plaintiff went to Yochem's truck and located the radio. As Plaintiff handed it to her, she ripped it out of Plaintiff's hands.  Plaintiff stated "you are welcome" Yochem replied "I should not have to thank you for my stuff." Plaintiff then told Yochem "I did not take her radio nor would I want to take it; therefore, she is being rude to the wrong person." This is an example

of how Defendant under the control of Hugo in LALA permits lower level employees to treat women in charge worse than men in charge.

25. In Hugo's investigation of the radio, he asked why Plaintiff did not handle the taking of her cell phone correctly. Plaintiff told him that she did contact security. Also, during this investigation Hugo threatened Plaintiff with going to the cameras. He stated "Karrie, you do know I can pull the footage at any time." Plaintiff responded "Go ahead and you will see I know nothing of her radio." During this "so called investigation" Couriers were encouraged to oust a female leader. Witnesses are: Mark Ketchum, Dianna Harhai, Edgar McCaslin, Wayne Barrett. They were approached by Mark (manager at LALA) and Duke (manager at BOW, but heads the CSA at LALA) to provide biased statements. Hugo did not hold male managers to the same standard as he held females.

26. Also, during the month of December, Defendant buys Christmas gifts for the couriers. Up north the hats are given to individual managers by the Sr and the managers distribute them to

the couriers in their individual workgroup. Here at Lakeland, however, Hugo left it up to Lisa Williams, a lower level female employee that Hugo treats as a secretary. Plaintiff sent Hugo several emails and spoke to him directly as to how Lisa Williams does not help Plaintiff with her job, which hinders Plaintiff's job or helps to make Plaintiff look bad in front of her employees. This is another example of where low-level employees are permitted (in fact encouraged) to treat female leaders worse than male leaders. The food that was ordered for the team did not leave enough left for the night crew. The hats were never given to Plaintiff therefore she could not hand them out to her couriers. Again, when Plaintiff brought this to Hugo's attention, he did nothing about it.

27. Plaintiff told Hugo over the course of the year how Lisa did not help her and the only time she ever answered Plaintiff was when she was within earshot of either him or another manager. Hugo blamed Plaintiff for most things.

28.    Hugo never addressed the male managers at Lakeland, as Mark left most days by noon and his "late" days by 1PM, meanwhile Plaintiff was told if she had to work doubles then that is what she had to do. Plaintiff made a statement in an email as to how he had double standards for women versus men. Simply put male managers were allowed to work under better working conditions than female managers.

29.    In September and December 2018 and again in February 2019 Plaintiff submitted a workplace violence complaint. The first 2 were anonymous and the last one Plaintiff put her name on it. After the third one was submitted, Plaintiff spoke to Ralph Destefano and within three months Plaintiff was fired. Destefano and Plaintiff had a phone conversation in February, shortly after John interviewed Plaintiff and determined there was not any workplace violence.

30.    Throughout all of these investigations there were no HR representatives present. Plaintiff was never questioned nor reached out to by HR. Plaintiff was not taken seriously by Hugo nor the

company (Defendant gives a great deal of authority to certain positions), Plaintiff also filed an EEO with Defendant and was never interviewed nor contacted by any one from the local HR or Memphis HR.

31. Plaintiff was never written up (Letter of Discipline) all the while at the ROC or BVY stations. However, under Hugo Plaintiff was found to be so egregious with her duties she was written up (Letters of discipline) and fired within 9 months. He did not write up similarly situated male employees.

32. Plaintiff received a letter in August for trying to help a courier out (white female) and was told this was against policy 2.5, acceptable conduct. She did not meet her time in her commitment; she was leaving the state not just moving around the corner. Lakeland was short handed and hiring needed to hire several people. During the months Plaintiff was hiring, Hugo kept telling an employee from BOW to apply and had Plaintiff add another slot so

he could put in, this employee, who was a black male. Hugo was making a spot for him specifically. He became a swing driver.

33. Plaintiff received a letter in February 2019 for violating 2.5, Plaintiff fired a black male in Jan 2019 and was told Plaintiff did not complete that process completely. Plaintiff told Hugo when she fired a white male in January 2018, Plaintiff followed the same procedure and was never corrected.

### III. Statutory Claims

**Count I – Title VII Sex Discrimination**

34. Plaintiff reincorporates paragraphs 1 through 33 as if fully stated herein.

35. Hugo wrote Plaintiff up and terminated Plaintiff because she is a female.

36. Hugo treated similarly situated males more favorably.

37. Defendant permitted Hugo to recommend Plaintiff's termination and approve his own recommendation.

38. If Plaintiff was male or if Hugo was not her direct supervisor Plaintiff would still be working for Defendant.

Wherefore, Plaintiff demands trial by jury, judgment, back pay, front pay (reinstatement if possible), compensatory damages, punitive damages, attorneys' fees, costs and any other relief the Court deems appropriate and just.

### Count II – Title VII Retaliation

39. Plaintiff reincorporates paragraphs 1 through 33 as if fully stated herein.

40. Plaintiff complained to Defendant that women were being treated worse than males.

41. Plaintiff believed that Defendant's LALA station was engaging in gender discrimination as it related to women of authority.

42. Plaintiff objected.

43. Plaintiff was written up and terminated due to her objection to gender discrimination.

Wherefore, Plaintiff demands trial by jury, judgment, back pay, front pay (reinstatement if possible), compensatory damages, punitive damages, attorneys' fees, costs and any other relief the Court deems appropriate and just.

### Count III – FCRA Gender Discrimination

44. Plaintiff reincorporates paragraphs 1 through 33 is if fully stated herein.

45. Hugo wrote Plaintiff up and terminated Plaintiff because she is a female.

46. Hugo treated similarly situated males more favorably.

47. Defendant permitted Hugo to recommend Plaintiff's termination and approve his own recommendation.

48. If Plaintiff was male or if Hugo was not her direct supervisor Plaintiff would still be working for Defendant.

Wherefore, Plaintiff demands trial by jury, judgment, back pay, front pay (reinstatement if possible), compensatory damages,

punitive damages, attorneys' fees, costs and any other relief the Court deems appropriate and just.

### Count IV – FCRA Retaliation

49. Plaintiff reincorporates paragraphs 1 through 33 is if fully stated herein.

50. Plaintiff complained to Defendant that women were being treated worse than males.

51. Plaintiff believed that Defendant's LALA station was engaging in gender discrimination as it related to women of authority.

52. Plaintiff objected.

53. Plaintiff was written up and terminated due to her objection to gender discrimination.

Wherefore, Plaintiff demands trial by jury, judgment, back pay, front pay (reinstatement if possible), compensatory damages, punitive damages, attorneys' fees, costs and any other relief the Court deems appropriate and just.

Respectfully submitted this 6th day of December 2019,

/s/ **Bernard R. Mazaheri**
Bernard R. Mazaheri
Florida Bar Number 643971
Mazaheri & Mazaheri
312 S. 4th St., Ste. 700
Louisville, Kentucky 40202
Tel – 502.475.8201
Email – bernie@thelaborfirm.com

*Counsel for Plaintiff*